THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALGREEN CO. | ) |
|         *Plaintiff,* | ) No. 23 17067 |
| v. | ) |
| | ) Chief Judge Virginia M. Kendall |
| WALGREEN HEALTH SOLUTIONS, LLC and CHARLES R. WALGREEN | ) |
|         *Defendants*. | ) |

**OPINION AND ORDER**

Pending before the Court is Defendants' Walgreen Health Solutions, LLC and Charles R. Walgreen's Motion to Dismiss. (Dkt. 112). Plaintiff Walgreen Co. alleges in its seven-count Amended Complaint trademark infringement, false representation, and breach of contract among other claims. (Dkt. 106). Defendants move to dismiss Count VII of the Amended Complaint—the breach of contract claim. For the following reasons, the Court grants Defendants' motion. [112].

**BACKGROUND**

The Court assumes familiarity with facts of this case based on its September 24, 2024, Order, granting in part, Defendants' motion to dismiss Plaintiff's original Complaint. (Dkt. 91). The following facts are taken from the Plaintiff's Amended Complaint, (Dkt. 106), except where noted. Defendant Charles R. Walgreen ("Mr. Walgreen") is the great grandson of the founder of Walgreen Co.; Mr. Walgreen is also a founder and CEO of Walgreen Health Solutions, LLC. ("WHS"), a company with no affiliation to Walgreen Company. WHS trades in durable medical equipment and provides various healthcare advice and products. Prior to Mr. Walgreen's launching WHS, he was also affiliated with two other companies—Walgreen Asset Group Inc. and American

1

Health and Wellness, LLC d/b/a iWag (the "Companies")—which are not parties to this dispute. (Dkt. 118 at 1–2). These non-party Companies sold "iWag"-branded phone cases and protectors, which used very similar markers to some of Plaintiff's products. (*Id.*)

In 2013, to avoid trademark infringement litigation, Mr. Walgreen entered into a settlement agreement with Plaintiff, which obligated Mr. Walgreen to take reasonable steps to avoid confusion between the Companies and Walgreens (the "2013 Agreement"). (Dkt. 118 at 1). The 2013 Agreement memorialized Plaintiff's purchase of iWag product inventory from the Companies and settled a trademark dispute unrelated to this case. As part of the 2013 Agreement, Plaintiff agreed to purchase from the Companies 18,000 iWag cases and 30,000 screen protectors.

By the 2013 Agreement's own terms, the contract's "purpose . . . [was] to conclude . . . discussions in regards to" certain "open items." (Dkt. 106-2 at 1, Exhibit 2 of Plaintiff's Amended Complaint). These four "open items" related specifically to U.S. TM Application No. 85/840,317 and details about American Health and Wellness, LLC and Walgreen Asset Group Inc.'s online presence and product packaging. (*Id.*) After listing these "open items," the 2013 Agreement stated:

> In the interest of concluding this matter and all parties moving past this issue, American Health and Wellness, LLC d/b/a iWag and Walgreen Asset Group, Inc. (together, the "Companies") and Walgreen Co. have reached the following amicable solution [ . . . ] Charles Walgreen represents and warrants that he has full power to enter into this Agreement on behalf of the Companies and that he, neither individually or on behalf of any entity not a party to this [A]greement, will take any action which conflicts with the obligations of the Companies herein.

(*Id.* at 3). In its original Complaint Walgreen Co. argued that Mr. Walgreen violated the 2013 Agreement provision that "the Companies, together with their officers and agents, will take

2

reasonable precautions to insure[sic] their businesses are not confused with Walgreen Co.[.]" (Dkt. 91 at 16).

The Court dismissed the original Complaint for failure to state a claim. (Dkt. 91 at 15–16). Specifically, the Court found that because the 2013 Agreement defined the Companies as Walgreen Asset Group and American Health and Wellness d/b/a iWag, Mr Walgreen's agreeing to not "take any action which conflicts with the obligations of the Companies herein" did not bind him with respect to *other* companies. (*Id.*)

On December 22, 2023, Plaintiff filed a seven-count Amended Complaint against Mr. Walgreen and WHS. Count VII of the Amended Complaint again alleges a breach of contract, referencing the 2013 Agreement between the parties. Though Plaintiff acknowledges that the 2013 Agreement only referenced the Companies, Plaintiff contends that "the parties mutually understood—as reflected in the written contract itself, as well as the negotiation history— . . . that [the 2013 Agreement] prohibited [Mr. Walgreen] from starting any new business in which he failed to take reasonable precautions to ensure that new business was not confused with Walgreens." Further, Plaintiff argues that by forming WHS, registering websites for the company, and using confusingly similar markings to Walgreens, Mr. Walgreen breached the 2013 Agreement.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory*, *LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## **DISCUSSION**

To state a claim for breach of contract under Illinois law, Walgreen Co. must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Defendants argue that Plaintiff failed to adequately plead the breach and damages elements.

We begin with the breach element. Under Illinois law's four corner's rule, a written contact "must be presumed to speak the intention of the parties who signed it [. . . .] and the intention with which it was executed must be determined by the language used." *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992–93 (7th Cir. 2007) (internal quotations omitted). The Court first must evaluate the contract's language and, if it is unambiguous, may not review parole evidence. *Baro v. Lake Cnty. Fed'n of Teachers Local 504*, 57 F.4th 582, 587 (7th Cir. 2023) (explaining that under Illinois contract law, unambiguous language in a contract means that the Court's analysis does not consider the subjective understanding of the parties). "Only if the 'contract's language is susceptible to more than one interpretation' would [a court] look to extrinsic evidence to determine

4

the parties' intent. *Id*. at 587 (quoting *Camico Mut. Ins. Co.*, 474 F.3d at 993); *see also Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (cleaned up) ("Illinois follows the objective theory of intent, whereby the court looks first to the written agreement and not to the parties' subjective understandings."). Furthermore, "[t]he interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage." *Golden v. Wiznitzer*, No. 13 C 9003, 2014 WL 1329397, at *1 (N.D. Ill. Apr. 2, 2014) (citing *De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp.*, No. 07 C 0045, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007)).

Because the 2013 Agreement was a written contract, the Court must determine whether its language is ambiguous. Unsurprisingly, the parties disagree over this issue. The central disagreement between the parties is over the meaning of the words above where Mr. Walgreen signed the 2013 Agreement in his individual capacity. (Dkt. 106-2 at 3). The portion at issue states:

> Charles Walgreen represents and warrants that he has full power to enter into this Agreement on behalf of the Companies and that he, neither individually or on behalf of any entity not a party to this [A]greement, will take any action which conflicts with the obligations of the Companies herein.

(*Id*.)

When read in context with the rest of the 2013 Agreement, this language is unambiguous. Based on the plain language, it binds Mr. Walgreen from taking any actions either individually or on behalf of non-entity party to the Agreement, which conflict with the Companies' obligations outlined in the contract. Per the contract, these obligations include "tak[ing] reasonable precautions to insure their businesses are not confused with Walgreen Co."( *Id*. at 2).

Nothing in the Amended Complaint alleges that Mr. Walgreen did anything, which would lead to these Companies—neither of which is a party to this lawsuit—to violate the 2013 Agreement. (*See* Dkt. 106-2). Further, the Agreement focuses on a specific trademark with U.S.

5

TM Application No. 85/840,317, which is not the trademark that is the subject of this litigation. *Id*. at 1. Moreover, the contract states that "[t]he purpose of the Agreement is to conclude our discussions in regards to . . . open items." (*Id*.) The four "open items" listed in the contract reference either the trademark not at issue in this dispute or details concerning American Health and Wellness and Walgreen Asset Group—again, neither of which are parties to this lawsuit. (*Id*.) Consequently, nothing indicates that the contract categorically prevented Mr. Walgreen from using his last name and creating products for an entirely new enterprise, which did not even exist until 2018, five years after the parties executed the 2013 Agreement.

Plaintiff argues that the line, "individually or on behalf of any entity not a party to this agreement" necessarily means that Mr. Walgreen could not open a new company that sold merchandise, which is similar to Walgreens merchandise, even if that company had nothing to do with American Health and Wellness and Walgreen Asset Group. (Dkt. 118 at 5). In other words, as Plaintiff sees it, by establishing a new company (i.e., WHS), which sold products with similar logos to Plaintiff's, Mr. Walgreen violated the 2013 Agreement. (*Id*. at 6).

This interpretation, however, is unreasonable in the context of the entire contract for the reasons stated above—namely that the entire 2013 Agreement was explicitly in reference only to two specific companies, which existed at the time the parties executed the contract. (*See* Dkt. 106-2). Consequently, Plaintiff has failed to allege their breach of contract claim's third element, that Defendants, in fact, *breached* the 2013 Agreement.[1]

---

[1] Because the Court finds that Plaintiff failed the sufficiently plead the third element of its breach of contract claim, it need not analyze Defendant's damages or statute of limitations arguments.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss [22] is granted. Because the Court finds that an amendment would be futile, the claim is dismissed with prejudice.

Virginia M. Kendall
United States District Judge

Date: January 16, 2025